UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DOROTHEA BRAGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:05-CV-88-TLS |
| | ) | |
| TRUSTEES OF PURDUE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

This matter is before the Court on the motion for summary judgment filed by the Defendant, the Trustees of Purdue University, on March 30, 2006. The Plaintiff filed her Amended Complaint on May 12, 2005. The Complaint stated claims against the Defendant under Title VII for constructively discharging the Plaintiff, discriminating against her on the basis of her gender, maintaining a hostile work environment, and retaliating against her. The Plaintiff responded to the Defendant's motion for summary judgment on May 2, 2006, and the Defendant replied on May 18, 2006. For the reasons stated below, the Defendant's motion will be granted.

**A.     Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. Rule 56© further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are

no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe*, 43 F.3d at 443. However, under Northern District of Indiana Local Rule 56.1(b), the Court is to assume that the facts claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence.

There is no separate rule of civil procedure governing summary judgment in employment discrimination cases. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997) (noting, however, that issues of intent, such as in discrimination cases, are often critical issues that are genuinely contestable). Summary judgment in favor of the defendant is hardly unknown, or for that matter rare, in employment discrimination cases. *Id.*

**B.     Facts**

Construing all facts in a light most favorable to the Plaintiff, and drawing all legitimate inferences in favor of the Plaintiff, the following facts are assumed true for the purposes of summary judgment.

**(1)** *Background*

The Twenty-First Century Scholars Program ("Scholars Program") is a statewide scholarship created by the Indiana General Assembly. There are sixteen Regional Scholar Support Programs throughout Indiana. The Northeastern Indiana Regional Support Program is housed on the campus of IPFW University, and is administered by IPFW's Office of Multicultural Services. The Defendant is responsible for managing and operating IPFW. The staff of the Scholars Program are Purdue employees and are subject to University policies and procedures.

The Scholars Program is supervised by a Regional Site Coordinator. The Site Coordinator reports to IPFW's Director of Multicultural Services, who reports to the Vice Chancellor of Student Affairs. The staff of the Scholars Program includes a Student Coordinator, a Volunteer/Assistant Coordinator, a Parent Coordinator, and an Administrative Assistant.

The Plaintiff was hired on November 18, 2002, as the Student Coordinator. Norm Newman was the Volunteer/Assistant Coordinator, Martin Murphy was the Parent Coordinator, and Zanzy Moore and Travis Blue were Administrative Assistants. Kellie Turner was the Site Coordinator—the Plaintiff's immediate supervisor—when the Plaintiff was hired. Christine Patterson was the Director of the Multicultural Services Department and Dr. Edna Neal was the Vice Chancellor of Student Affairs. Patterson was later replaced by Ken Christmon. Chris Douse was the Assistant Director of the Multicultural Services Department. Douse's supervisor was Patterson until Patterson was terminated, after which Douse reported to Christmon, Patterson's replacement. Seana Murphy was the director of the Scholars Program. It is not clear what her role is in managing the IPFW office or what authority she has over the employees there.

3

**(2)** *Plaintiff's Work History*

The record of the Plaintiff's work history shows her to have been disciplined numerous times.

The first instance took place in May 2003. Turner issued a disciplinary memorandum to the Plaintiff for missing an appointment at Kekionga Middle School on May 8, 2003. The Plaintiff states that she checked her calendar the day of the appointment and the Kekionga Middle School visit was not on her calendar. The Plaintiff states that Moore was responsible for maintaining the online calendar, and that Moore did not add the appointment to her calendar until after Moore discovered that the Plaintiff missed the appointment. The Plaintiff told Turner about Moore's failure to have the calendar updated, but Turner laughed about it, not believing the Plaintiff's statement.

The second instance took place in June 2003, when Patterson emailed the Plaintiff admonishing her for failing to arrange for the transportation of students from an event. The Plaintiff states that a camp for students was planned in Bloomington. At a staff meeting, with Turner present, prior to committing to transport the students, the Plaintiff raised the issue of who would transport the students. The Plaintiff sent an email to Patterson asking whether another staff member could pick up the students if she would drop them off. Patterson responded by scolding the Plaintiff for not having considered how the students were to be transported and stating that the issue should have been discussed with the Plaintiff's supervisor, Turner, before the commitment was made. The Plaintiff believes she was unfairly reprimanded because she did raise the issue at the earlier staff meeting where her supervisor was present. Patterson's email also expressed concern that the Plaintiff was asking Newman for volunteers to make phone calls when the Plaintiff knew there were no volunteers and that the Plaintiff attended a student event even though no students attended. The Plaintiff states it was not her job, but Newman's, to recruit volunteers, and that the Plaintiff was told to attend the event by her supervisor, Turner.

The Plaintiff states that she expressed her concerns to Seana Murphy about Turner's differing

4

treatment between men and women. The Plaintiff told Murphy how Turner once stated that Newman was hired "because he was a white male, and she needed him there . . . for racial balance . . . ." (Bragg Dep. 132, DE 35.) The Plaintiff states Newman was favored in several ways. There was a constant concern over the lack of volunteers, and it was Newman's job to recruit them. Though there was recruitment at churches, Newman was excused from going to churches. Also, Newman failed to schedule appointments in a timely manner and missed appointments.

On October 28, 2003, the Plaintiff wrote a long letter to her supervisor Turner, Seana Murphy, and Dr. Neal regarding the lack of staff communication in the Scholars Program. The letter did not raise any concerns about disparate treatment between male and female employees. Rather, the letter discusses the Plaintiff's lack of access to Turner, Turner's confusing methods of communication, and Turner's failure to inform the Plaintiff of important decisions. Turner replied to the Plaintiff's letter addressing her concerns. Turner's letter also raised concerns with the Plaintiff's performance, citing the Plaintiff's disorganization and failure to follow instructions.

On November 7, 2003, the Plaintiff was placed on probation, which lasted until January 2004. Seana Murphy issued the Notice of Probation and told the Plaintiff the decision was based on the ongoing struggles taking place between the Plaintiff and Turner. The reasons for probation stated in the memorandum include lack of attention to proper protocol and procedures, poor implementation of directives from the Central Office, and inefficient use of time and resources. The memo also cited the Plaintiff's letter to Turner as showing a lack of effort on the Plaintiff's part to get along with her supervisor. The Plaintiff's probation status required her to submit completed paperwork to the Central Scholar's Program Office, complete conflict resolution training, complete training on managing multiple tasks, and complete a stress management course. The Plaintiff asserts that the probation was not warranted, but does not say why it was not warranted.

The Plaintiff's annual employment evaluation occurred while she was on probation. She was given a below average raise because of the reprimands she received and because she was on

probation. No other employee was on probation during the evaluation period. Despite her below average raise, she remained the highest paid non-supervisory employee in her department.

Turner reprimanded the Plaintiff on June 22, 2004, because the Plaintiff improperly addressed Scholars Program correspondence. The mail was not delivered and returned to the Scholars Program. Also, Turner wrote that the manner in which the envelopes were addressed and the information presented was unprofessional and did not satisfy the program's standards. The Plaintiff states the manner of addressing the envelopes—handwriting by the students rather than typed—was approved by Turner, and that the mail was returned because one envelope was incomplete, and that envelope was Murphy's, not the Plaintiff's. As to the contents of the letter, the Plaintiff states that it was approved by Turner as well.

After the June 2004 reprimand, the Plaintiff complained to IPFW Affirmative Action/Equal Opportunity Officer Judy DiIorio. Although she was told how to file a complaint, she did not do so.

On July 8, 2004, Patterson was terminated as Director of Multicultural Services Department, and Ken Christmon replaced her. Later in July 2004, Turner was terminated from her position as Site Coordinator of the Scholars Program. Christmon assumed her duties on an interim basis. He announced the opening for the Site Coordinator position shortly after Turner's termination.

The Plaintiff applied for the position and interviewed for it on September 14, 2004. JoAnne Alvarez, a female, was hired for the position. The reasons the Plaintiff was not hired, according to Christmon, were her past job performance, Alvarez's superior performance during interviews, and Alvarez's superior qualifications. Alvarez's qualifications included leadership and administrative experience from her past employer, United Hispanic-Americans, Inc. Christmon states that the Plaintiff's gender and the fact that the Plaintiff had complained to her former supervisor Turner were not factors in the decision not to hire the Plaintiff.

On September 16, 2004, the Plaintiff filed allegations of gender discrimination and retaliation with the Fort Wayne Metropolitan Human Relations Commission and the United States

6

Equal Opportunity Employment Commission, even though she was not yet aware whether she had received the position of Site Coordinator.

The Plaintiff was again reprimanded in October 2004, this time by Dr. Neal. Neal's memo warned the Plaintiff that her conduct on October 5, when she raised her voice in a threatening manner to two co-workers, would not be tolerated. The memo stated that this was the second incident of such conduct during that week. The previous incident occurred on October 4 with Christmon, after which Christmon told her that her tone and demeanor had concerned him. Neal stated that such conduct would not be tolerated and that further outbursts could be grounds for dismissal. Neal also advised the Plaintiff that there was a free and confidential counseling service the Plaintiff could use to improve her behavior. The Plaintiff states that she does not know what incident Christmom's email referred to, and denies that she raised her voice to any co-worker. On October 11, 2004, Neal sent the Plaintiff the memo along with a letter seeking to set up a meeting to discuss the Plaintiff's concerns. The Plaintiff did not return to work after October 8, 2006.

On October 13, 2004, the Plaintiff requested and received Family Medical Leave. She took leave because of stress, depression, and anxiety. Her health care providers advised her that it would not be healthy to return to work, so after exhausting 12 weeks of leave, she resigned on February 1, 2005.

### (3) *Basis for the Plaintiff's Claims*

The Plaintiff claims she suffered adverse employment actions on the basis of her gender that subjected her to a humiliating, degrading, unsafe, and unhealthy workplace environment, eventually forcing her to stop working, making this a case of constructive discharge. The Plaintiff's main complaint seems to be that she was repeatedly reprimanded for conduct that the male employees were not reprimanded for, or for conduct that was the responsibility of her male co-workers.

7

The Plaintiff states that male employees were given broader use of company vehicles. The Plaintiff cites one instance in which she was denied use of a vehicle, and that the reason given for the denial was that university vehicles were no longer to be used for trips within the city to save costs. She also stated that everybody had to go through the same procedures to obtain use of a university vehicle. No evidence is before the Court as to the use of university vehicles by male employees.

The Plaintiff claims she was denied attendance at professional seminars and conferences, including a computer training conference in South Bend and internal IPFW computer training. She states that Martin Murphy and Newman had opportunities to attend several computer training conferences. She requested to attend one seminar in South Bend, but was told by Turner it would not be cost effective and that Turner would try to set up a similar seminar at the local office. The Plaintiff also signed up for a computer workshop at IPFW, but was told not to sign up for any more without Turner's approval, because Turner did not believe the workshops were necessary.

The Plaintiff states that Turner did not grant her requests for vacation time as quickly as she did those of male employees. She states that Christmon did not file vacation requests late when he took over for Turner. Asked about her vacation requests for the 300 days prior to her EEOC filing, the longest the Plaintiff waited for vacation approval from Turner was 12 days, and this was granted over five weeks before the requested period. All other requests were granted within three days of the request.

The Plaintiff alleges that her raise in pay was less than average. She understood that her salary was the highest among the non-supervisory employees; higher than that of the male employees.

The Plaintiff also claims she was discriminated against when the Defendant did not hire her to fill the position vacated by her supervisor Turner.

## C. Gender Discrimination

Title VII of the Civil Rights Act of 1964 provides in part:

It shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). To be actionable, the offensive conduct must be based on one of the characteristics protected by Title VII, such as sex. 42 U.S.C. § 2000e-2(a)(1)

The Plaintiff presents no direct evidence of discrimination, so the Court will analyze her claims under the familiar burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529–31 (7th Cir. 2003). To establish a prima facie case of sex discrimination under Title VII, the Plaintiff must show that (1) she was a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the employer treated a similarly situated male employee more favorably. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742–43 (7th Cir. 1999). If the Plaintiff fails to establish even a single prong of her prima facie case, her claim cannot survive summary judgment. If the Plaintiff establishes a prima facie case of discrimination, then the burden shifts to the Defendant to provide legitimate reasons for any disparate treatment. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1995). If the Defendant provides legitimate reasons, then the Plaintiff must establish that the proffered reasons are pretextual. *Id.*

The Plaintiff is female and belongs to a protected class for purposes of Title VII. Because the Plaintiff has not met all of the requirements of a prima facie case, and the Defendant has legitimate reasons for its actions the Plaintiff cannot show to be pretextual, the Court will grant the Defendant's motion for summary judgment on the Plaintiff's discrimination claim.

**(1)** *Adverse Employment Actions*

The Court agrees that the Plaintiff's below-average raise and the decision not to promote the Plaintiff are adverse employment actions. Also, denial of training is generally considered an adverse employer action where routine training is denied to an eligible employee who is within a protected group under circumstances giving rise to an inference of discrimination. *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998). However, the Plaintiff also claims she suffered adverse employment actions in that her vacation requests were not timely responded to, she was unjustly reprimanded, and that she was not given access to university vehicles. The evidence does not support the existence of any actionable employment decisions as to the use of university vehicles, the granting of vacation requests, or her reprimands, except insofar as the reprimands relate to the amount of the Plaintiff's raise or the decision not to promote her.

An employment decision is not actionable unless it is a materially adverse change in the terms and conditions of employment, meaning that it is more disruptive than a "mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Termination, demotion evidenced by a decrease wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities may indicate a materially adverse change. *Oest v. Ill. Dep't of Corr.*, 240 F.3d at 612–13 (citing *Crady*, 993 F.2d at 136). Although the Seventh Circuit defines adverse employment actions "quite broadly," *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996), an adverse action must still have some "tangible job consequence." *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998). The Seventh Circuit has noted that "not everything that makes an employee unhappy is an actionable adverse action." *Oest*, 240 F.3d at 613 (citing *Smart*, 89 F.3d at 441).

The Plaintiff's claim that she was not allowed to use university vehicles because of her gender lacks evidentiary basis. The Plaintiff states that the process for obtaining use of a vehicle was the same for everybody and has offered no evidence as to the car usage of the male employees. She

stated that there was only one instance in which she was denied use, but this is not a material change in the condition of her employment. In fact, it was not even an inconvenience, as she stated it turned out that she did not need the car that day. She was also paid for mileage used when driving her own car for job related trips. The one instance where the Plaintiff was denied use of university vehicles is not actionable.

The Plaintiff's claim regarding vacation requests also fails to show an adverse employment decision. Waiting 12 days for a vacation request might have made her unhappy, but it was nothing more than an inconvenience. The Plaintiff's request was responded to weeks before the requested time off. The Plaintiff has not shown that any hardship resulted from the slight delay. The Plaintiff refers to vacation requests in June 2003 that were denied because of work that needed to be done, but these occurred more than 300 days before her EEOC filing and are outside of the statute of limitations, and therefore, will not be considered. "Under Title VII, a plaintiff has 300 days from the date of the alleged unlawful employment practice to file a charge with the appropriate federal or state agency; conduct occurring prior to the limitations period cannot form the basis of a Title VII suit." *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005).

Finally, most of the Plaintiff's reprimands also did not result in any tangible job consequence. To the extent the reprimands did not affect her benefits or responsibilities, they are not actionable.

**(2)** *Employer's Legitimate Expectations and Treatment of Similarly Situated Males*

The Plaintiff claims her reprimands were not justified because her male co-workers were not reprimanded for the same conduct or because she was blamed for the failures of her male co-workers. Because the Plaintiff has produced evidence that the employer applied its legitimate expectations in a disparate manner, the Plaintiff may establish a prima facie case by showing that similarly situated employees were treated more favorably. *Grayson v. O'Neill*, 308 F.3d 808, 818

11

(7th Cir. 2002).

To be "similarly situated," a plaintiff must show that "her performance, qualifications, and conduct were comparable to the nonprotected class member in 'all material respects.'" *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 274 (7th Cir. 2004). "Broad-brushed, conclusory allegations" are not sufficient to show nonprotected employees are similarly situated, *Scaife v. Cook County*, 446 F.3d 735, 740 (7th Cir. 2006), rather, comparative evidence allowing the Court to make a reliable analysis is necessary. *Dandy*, 388 F.3d at 274.

The Plaintiff has done nothing to show her male coworkers were similarly situated other than offer conclusory allegations. The Plaintiff addresses the issue only by saying in her brief that "With the exception of their specific job titles and areas of responsibility, Martin Murphy and Norm Newman are appropriate comparitors." (Pl. Br. 14, DE 34.) No admissible evidence is cited or referred to. The Plaintiff has the burden to show Martin Murphy and Newman were similarly situated in all material respects, and has made no effort to do so. The Plaintiff has failed to establish a prima facie case of gender discrimination.

The areas of responsibility of Martin Murphy and Newman are relevant to determine whether the Defendant's legitimate expectations were applied discriminatorily and whether the Plaintiff was denied training because of her gender. Because Martin Murphy, Newman, and the Plaintiff all had different job responsibilities, the Defendant's expectations would be different, at least in some respects. The Plaintiff points to several of her reprimands claiming they were not justified because she was punished for the failures of the male employees or that the male employees were not punished for similar behavior. But without evidence showing the male coworkers were similarly situated, the different treatment cannot raise the inference of discrimination. For example, whether Newman's missed appointments were of the same type and importance as the appointments for which the Plaintiff was reprimanded for missing is relevant to deciding whether the differing treatment was discriminatory or based on the different job responsibilities and circumstances. Also,

12

because Martin Murphy and Newman have different job responsibilities, it might have been more important that they attend seminars and training than the Plaintiff. But no evidence has been presented to allow such a comparison to be made. The Plaintiff has not shown Martin Murphy and Newman to be similarly situated employees, and therefore has failed to meet her burden to show a prima facie case of discrimination.

Because the Plaintiff has no evidence that any nonprotected employees were similarly situated, she cannot show the Defendant was discriminatory in applying its legitimate expectations. She also cannot show she met her employer's legitimate expectations. She complains that she received a below-average raise, but she was on probation at the time raises were granted. The reasons given by the Defendant for putting the Plaintiff on probation were her failure to get along with Turner as well as lack of attention to proper protocol and procedures, poor implementation of directives from the Central Office, and inefficient use of time and resources. The letter of probation cited the letter she wrote on October 28, 2003, as evidence of the Plaintiff's failure to cooperate. The Plaintiff's October letter made no mention of disparate treatment by Turner. The Plaintiff offers an unsupported statement that probation was not warranted, but nothing else. (Pl. Br. 5, DE 34.) The content of the Plaintiff's letter suggests the Plaintiff was having difficulty working out her problems with Turner. Also, the Plaintiff does not offer any excuse or explanation as to the probation letter's statement that she gave insufficient attention to proper protocol and procedures, poorly implemented Central Office directives, or inefficiently used her time and resources. The Plaintiff has not shown that she met her employer's legitimate expectations with respect to her probation and below average pay raise.

Finally, the Plaintiff's claim that she was discriminated against when she was not hired for the supervisor position fails because the open position was filled by a person who was a member of the same protected class as the Plaintiff; both the Plaintiff and Alvarez are female. *See Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1110 (7th Cir. 2004) (stating that a plaintiff must present

13

evidence that the employer filled an open position with an individual outside of the plaintiff's protected class, or that the position remained vacant, for the plaintiff to present a prima facie case). Thus, the Plaintiff cannot meet her burden of showing a prima facie case of discrimination as to the decision not to hire her.

**(3)** *Defendant's Reasons for Adverse Employment Actions & Evidence of Pretext*

Even if the Plaintiff was able to show a prima facie case, she has no evidence to show her employer's proffered reasons for her treatment were pretextual. "A pretext is a deliberate falsehood. . . . An honest mistake, however dumb, is not [a pretext], and if there is no doubt that it is the real reason it blocks the case at the summary-judgment stage." *Ray Forrester v. Rauland-Borg Corp.*, No. 05-4650, slip op. at 5 (June 29, 2006). What is under consideration is the employer's honesty as to its stated reasons for an adverse employment action, not whether the employer was mistaken in believing its reasons were justified or whether it made a bad decision. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999). The Plaintiff must offer some evidence that the employer's stated reasons did not in fact motivate the taking of the adverse employment action.

The Plaintiff states she was told she could not attend a seminar because it was not cost effective and a local seminar would be attempted, and that she could not attend computer workshops because they were not necessary. The Plaintiff has no evidence to suggest Turner was lying about these reasons.

Aside from the determination that most of the Plaintiff's reprimands had no effect on the Plaintiff's conditions of employment, the Plaintiff also lacks evidence calling into doubt the sincerity of Turner, Patterson, Seana Murphy, or Dr. Neal, regarding their reasons for reprimanding the Plaintiff. The Plaintiff disputes it, but offers nothing suggesting Turner did not believe that the Plaintiff's missed appointment was on the Plaintiff's calendar and that the Plaintiff should have checked her calendar. Similarly, no evidence suggests Patterson's stated reasons for reprimanding

14

the Plaintiff with regard to the incident involving the transport of students were a pretext. The Plaintiff claims she tried to work out transportation for the students ahead of time and had raised the issue with Turner previously, but the fact remains undisputed that the Plaintiff was still trying to work out transportation for the students on the eve of the event, and Patterson's comments reflect that. There is also no evidence that Patterson knew any more about the transportation issue than what the Plaintiff wrote her in the e-mail asking whether another staff member could transport the students. Seana Murphy's sincerity as to her reasons for placing the Plaintiff on probation has not been called into doubt, as the Plaintiff lacks any evidence that would tend to show Seana Murphy had a different motive. Finally, Dr. Neal's reprimand of the Plaintiff for raising her voice in a threatening manner is also disputed, but there is nothing suggesting Dr. Neal's justification was pretextual.

As to the Plaintiff's below average pay raise, the Defendant states she was given a lesser raise because she was on probation. There is no evidence to contradict the Defendant's stated motive, as the Plaintiff has offered nothing other than a denial that the probation was warranted.

The Plaintiff cannot meet her prima facie case to show the Defendant discriminated against her on the basis of her gender, and there is no evidence calling into question the Defendant's stated reasons for the adverse employment actions it took against the Defendant. The Plaintiff's discrimination claims must be dismissed.

**D.     Retaliation**

Title VII also makes it unlawful to discriminate against any employee who opposes a practice made unlawful by Title VII or because she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.  42 U.S.C. § 2000e-3(a).

To establish a prima facie case of retaliation the Plaintiff must show "that (1) after lodging a complaint about discrimination, (2) only [s]he, and not an otherwise similarly situated employee

15

who did not complain, was (3) subjected to an adverse employment action even though (4) [s]he was performing [her] job in a satisfactory manner." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003). If the plaintiff fails to establish even a single prong of her prima facie case, her claim cannot survive summary judgment. *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002). If the plaintiff makes a prima facie case, the defendant must offer a legitimate reason for the adverse employment action. If the defendant does so, the burden moves back to the plaintiff, so that if the plaintiff fails to establish pretext, her retaliation claim cannot survive summary judgment. *Id.* at 465.

**(1)** *Retaliation for Raising Turner's Disparate Treatment of Women*

The Plaintiff's retaliation claim cannot survive summary judgment. The Plaintiff claims her probation was retaliation for her statements to Seana Murphy that Turner discriminated in favor of men. However, as stated above, the Plaintiff cannot show she was performing her job in a satisfactory manner and this inability is the Defendant's stated reason for the Plaintiff's probation. The probation letter from Seana Murphy states the decision was based on the Plaintiff's failure to get along with Turner, lack of attention to directives, poor implementation of directives, and inefficient use of time and resources. The Plaintiff has no evidence disputing these claims to show she was satisfactorily performing her job duties.

The Plaintiff argues that the fact she was punished for not getting along with Turner, after she raised the issue of Turner's discrimination, shows the probation is punishment for opposing Turner's discrimination and that the Defendant's stated reason is a pretext. This is incorrect. It was not until after the Plaintiff wrote her long letter to her supervisors complaining of Turner's decisionmaking and lack of communication that the Plaintiff was put on probation. Her inability to get along with Turner with respect to these issues was a legitimate reason for punishing the Plaintiff, especially along with the other stated issues with the Plaintiff's performance. No evidence suggests

16

the reasons given for the probation were pretextual.

Because the Plaintiff cannot show she met her employer's legitimate expectations or that her employer's given reasons for punishing her were pretextual, the Plaintiff's retaliation claim with respect to her probation cannot survive summary judgment.

### (2) *Retaliation for Filing an EEOC Charge*

The Plaintiff argues that she was also retaliated against for filing her EEOC claim when Dr. Neal wrote her a reprimand about three weeks after her EEOC filing. This argument also fails. In the reprimand she complains of, Dr. Neal states her concern with two incidents involving the Plaintiff raising her voice in a threatening manner. No other disciplinary action was taken. This is not an adverse employment action, because it has not been alleged that the Plaintiff's conditions of employment were changed in any way as a result of this reprimand. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005). Also, there is no evidence in the record suggesting Dr. Neal's reason for the reprimand was pretextual. Dr. Neal was not present, and apparently believed the account of the employees who claimed they were threatened over the Plaintiff's denial.

### D. Hostile Workplace and Constructive Discharge

"In order to survive summary judgment on a hostile work environment claim, a plaintiff must present evidence that would establish that the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment in violation of Title VII." *Russell v. Bd. Of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336, 342–43 (7th Cir. 2001). In order to be actionable under Title VII, a hostile work environment must be both objectively and subjectively offensive, "such that a reasonable person would find the environment hostile or abusive, and . . . that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Conduct that does not satisfy these standards is not within the purview of Title VII.

In determining whether a work environment is hostile or abusive, a court will consider the totality of the circumstances and the following factors: "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Faragher*, 524 U.S. at 787–88. However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. "[R]elatively isolated instances of non-severe misconduct" will not support a hostile environment claim. *North v. Madison Area Ass'n for Retarded Citizens*, 844 F.2d 401, 409 (7th Cir. 1988).

The Plaintiff has shown no instances of conduct that could objectively be considered offensive or abusive, and does not make any argument as to what conduct created a hostile workplace. Without any argument on the issue, and with no conduct rising to the level required to set out a claim for hostile workplace apparent in the record, the Plaintiff's hostile workplace claim must be dismissed on the grounds that it appears to have been waived and that it is not supported by any evidence.

A claim for constructive discharge must be supported by evidence that no reasonable person would find the working conditions tolerable. The failure of the Plaintiff to establish a hostile workplace claim necessarily requires the dismissal of the Plaintiff's constructive discharge claim.

## ORDER

For the reasons stated in this Opinion, the Defendant's motion for summary judgment is GRANTED, and the case is DISMISSED. Judgment will be entered for the Defendant, the Trustees of Purdue University, and against the Plaintiff, Dorothea Bragg.

SO ORDERED on July 13, 2006.

/s/ Theresa L. Springmann

                                                                                              THERESA L. SPRINGMANN  
                                                                                              UNITED STATES DISTRICT COURT